## MYRON THOMALE v. KENNETH SCHOEN.

244 N. W. 2d 51.

July 2, 1976—No. 46197.

*Myron Thomale,* pro se, for appellant.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, and *Edward M. Laine,* Special Assistant Attorney General, for respondent.

PER CURIAM.

The issue on this appeal by plaintiff from summary judgment entered in Ramsey County Municipal Court is whether the so-called "gate-pay" statute, Minn. St. 243.24, subd. 2, violates the equal protection clause of the United States Constitution. We hold that it does not and affirm.

Plaintiff, after being released from prison, received as "gate-pay" $115.13, money he had earned in prison pursuant to § 243.23.[1] These earnings had been set aside and accumulated for him in a fund maintained by the institution in accordance with § 243.24, subd. 1.[2] Because plaintiff had accumulated $100

---

[1] Minn. St. 243.23 provides: "Notwithstanding any law to the contrary, the commissioner of corrections is authorized and empowered to provide for the payment to inmates of correctional institutions under his management and control of such pecuniary compensation as he may deem proper, the amount of compensation to depend upon the quality and character of the work performed as determined by the commissioner of corrections and the warden or superintendent, provided that such inmates who because of illness or physical disability cannot work may be paid a minimal amount per day as determined by the commissioner. Such earnings shall be paid out of the fund provided for the carrying on of the work in which the inmate is engaged when employed on state account, or from the current expense fund of the institution as the commissioner of corrections shall determine."

[2] Section 243.24, subd. 1, provides: "Any money arising under section 243.23 shall be and remain under the control of the commissioner of cor-

in his fund, he did not receive any supplemental payment under the "gate-pay" statute, § 243.24, subd. 2. That statute provides:

"If the fund standing to the credit of the prisoner on his leaving the institution by discharge or on parole be less than $100, the warden or superintendent is directed to pay out of the current expense fund of the institutions sufficient funds to make the total of said earnings the sum of $100, except that when a prisoner is released [on temporary parole] under section 243.14, the commissioner of corrections may authorize a lesser amount."

Arguing that this statute violates the equal protection clause of the United States Constitution, plaintiff filed suit for $102 ($2.00 filing fee included) in Ramsey County Conciliation Court. His claim was twofold: (1) That the statute differentiates improperly between those who work in prison and those who do not, and (2) that it discriminates between those prisoners who earn money from prison labor and those who earn money from other sources.

The conciliation court, persuaded by plaintiff's argument, granted plaintiff relief. On appeal by defendant, the municipal court granted summary judgment to defendant. It is this judgment which we affirm.

---

rections and shall be for the sole benefit of the prisoner, unless by special order of the commissioner of corrections it shall be used for rendering assistance to his family or dependent relatives, under such regulations as to time, manner and amount of disbursements as the commissioner of corrections may prescribe. Unless ordered disbursed as hereinbefore prescribed or for an urgency determined, in each case, by the warden or superintendent, at least one half of such earnings, but not to exceed a maximum to be determined by the commissioner, shall be set aside and kept by the institution in the public welfare fund of the state for the benefit of the prisoner and for the purpose of assisting him when he leaves the institution and if released on parole said sum to be disbursed to the prisoner in such amounts and at such times as the commissioner of corrections may authorize and on final discharge, if any portion remains undisbursed, it shall be transmitted to the prisoner."

Because the statutory classification challenged by plaintiff does not affect any "fundamental" interest and is not based on any classification which renders it "suspect," we may not follow the compelling interest approach in analyzing the claimed denial of equal protection. See, Note, 82 Harv. L. Rev. 1065. Rather, the approach we must follow is that traditionally employed in cases involving statutes in the area of economic and social welfare. Dandridge v. Williams, 397 U. S. 471, 90 S. Ct. 1153, 25 L. ed. 2d 491 (1970). Under this approach, a statute is not violative of equal protection simply because its application results in some inequities. Stated differently, a statutory discrimination or classification in this area will not be set aside if any set of facts may reasonably be conceived to justify it.

In enacting the "gate-pay" statute, the legislature attempted to ensure that all parolees have a small sum of money to aid them during the first days of their release from imprisonment. Only those who have money accumulated by reason of daily compensation paid to prisoners pursuant to § 243.23 are proportionately ineligible to receive a full statutory gratuity of $100. Presumably because the amount which the legislature felt could be appropriated for this purpose was minimal, the legislature decided to correlate assistance with need. By doing so and providing supplements only to those who have not accumulated $100, the legislature probably was able to ensure a greater gratuity than it would have otherwise been able to give if it had provided a flat payment to all parolees regardless of the amount accumulated in their funds. It may be, as plaintiff contends, that there are prisoners who refuse to work and prisoners who have saved money from other sources. Payment to such persons on their release may result in inequities. However, plaintiff has shown no set of facts which would warrant our holding that such assumed and undefined inequities result in an invidious discrimination in violation of equal protection guarantees. See, Dandridge v. Williams, *supra*.

Affirmed.